Herbert L. GOLDMAN, Administrator of the Estate of Esther B. Goldman, Appellant,

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare.

No. 12083.

United States Court of Appeals Third Circuit.

Argued March 19, 1957.

Decided July 2, 1957.

Jerome L. Markovitz, Philadelphia, Pa. (S. Robert Levant, Markovitz, Stern & Shusterman, Philadelphia, Pa., on the brief), for appellant.

Norman C. Henss, Asst. U. S. Atty., Philadelphia, Pa., (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Was there substantial evidence to support the finding of a Social Security Administration referee that a claimant for Old Age Insurance benefits had not been employed as claimed?

That issue is presented on this appeal from the Order of the District Court for the Eastern District of Pennsylvania granting the motion of the defendant Secretary of Health, Education and Welfare ("Secretary") for summary judgment. In granting the Secretary's motion, the District Court affirmed the final decision of the Social Security Administration that Mrs. Esther Goldman [1] ("claimant") was not an employee of certain corporations owned by her son and did not receive the wages from those corporations which were required to make her eligible for old-age insurance benefits under the Social Security Act.[2]

The facts may be summarized as follows:

On June 18, 1953, claimant, then aged seventy, filed an application for old-age insurance benefits with the Bureau of Old-Age and Survivors Insurance of the Social Security Administration ("Bureau"). In that application she stated that she had been employed by Charles Murray, Inc., Sandro, Inc., and Regency Clothes, Inc. from October, 1951 until March, 1953. Subsequently, on July 2, 1953, claimant was awarded old-age insurance benefits of $65.00 monthly which were paid to her for the period beginning April, 1953, and continuing through January, 1954.

Payments to claimant were terminated effective February, 1954. The Bureau made its determination that she had acquired no quarters of coverage by reason of the fact that she had not been employed nor had she received wages as she had claimed in her application. The Bureau's determination was based on a report made by its field representative, F. W. Brobyn that claimant had advised him when he called on her on February 18, 1954 that she had not been employed since the 1930's. Thereafter claimant requested and received a hearing before a referee of the Social Security Administration on July 25, 1955, and an adjourned hearing on August 5, 1955. She did not appear personally at these hearings because of her physical condition but was represented by her attorney.

At the July 25th hearing, Dr. Morris Elkin, claimant's physician, Herbert L. Goldman, her son and an officer of the corporations which employed her, Ronald Berman, her former fellow-employee and Jesse Ianni, her long-time friend, testified in claimant's behalf. Affidavit of a certified public accountant and four one-time fellow employees of claimant, as to her employment, were also adduced.

1. Esther Goldman died on December 2, 1955. Her son, Herbert L. Goldman, brought this action as administrator of her estate.

2. 42 U.S.C.A. § 402(a) et seq.

Brobyn testified with respect to his investigation and a statement of June 25, 1954, which he had obtained from the claimant.

At the further hearing on August 5, 1955, Florence Polk, one of the two attesting witnesses to the June 25, 1954, statement, appeared and testified, pursuant to the referee's subpoena. The second attesting witness, Ida Lessner, could not be found.

On September 29, 1955, the referee rendered his decision affirming the Bureau's determination as to the claimant's non-eligibility to benefits on the specific finding that " * * * claimant was not an employee of the three corporations, and did not receive a wage or salary from these corporations. Claimant had no quarters of coverage and was not entitled to old-age insurance benefits."

■ The request of the claimant for review of the referee's decision was denied on December 28, 1955, by the Appeals Council of the Social Security Administration and it then became a final decision within the meaning of the Social Security Act. Suit for review was then instituted in the District Court which, as earlier stated, granted the Secretary's motion for summary judgment, resulting in the instant appeal.

Section 205(g) of the Social Security Act, as amended [3] provides:

" * * * The findings of the Administrator [4] as to any fact, if supported by substantial evidence, shall be conclusive * * *."

■■ By virtue of the provisions of the section cited as well as the Administrative Procedure Act [5] we are charged with the duty of ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact.[6] Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46.

In discharging that duty we must keep in mind, as adjured by the Supreme Court, that "courts must now assume more responsibility for the reasonableness and fairness" of decisions of federal agencies "than some courts have shown in the past" and "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function." Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456.

■ The Secretary concedes that the referee relied upon an oral statement given by the claimant to Brobyn on February 18, 1954, and the signed statement of June 25, 1954 [7] that she had been

---

3. Id. § 405(g).

4. All functions of the Federal Security Administrator were transferred to the Secretary of Health, Education and Welfare by Section 5 of the 1953 Reorganization Plan No. 1, effective April 11, 1953, 18 Fed.Reg. 2053, 67 Stat. 631, 5 U.S.C.A. following section 133z–15.

5. 5 U.S.C.A. § 1001 et seq.

6. Since the capital appeals Council of the Social Security Administration denied review of the decision of the referee his findings of fact became the findings of fact of the Secretary under § 205(g) of the Act.

7. "Understanding that this statement is for the use of the Bureau of Old-Age and Survivors Insurance, I hereby certify that—

   "I have not been employed during the past four years. During this period I have been confined to my home at 323 S. 6th Street, Phila. Pa. by my physical condition. My friend, Ida Lessner, who visits me almost daily can confirm this as can also my cleaning woman, Florence Polk, who has worked for me for the past four years. My last employment was as a saleslady at Gimbels Dept. Store in Phila. This was about 1932.

   "Knowing that anyone who makes a false statement or misrepresents in connection with Federal Old-Age and survivors insurance benefits is committing a crime punishable under Federal law, I certify that the above statements are true.

   "s/ Mrs. Esther Goldman
   "323 S. 6th St.
   "Phila. Pa.
   "6–25–54

   "Witnesses:
   "Florence Polk
   "1620 Fitzwater St. Phila.
   "Ida Lessner
   "506 S. 5th St. Phila."

physically incapacitated during the years of her alleged employment in 1951, 1952 and 1953 and that she had never worked for the corporations in question.

It is clear that the referee based his finding that the claimant was mentally competent at the time she made these statements solely on Brobyn's opinion testimony to that effect.

On that score, Brobyn's testimony disclosed that he saw the claimant on but two occasions—one on February 18, 1954, when he first interviewed her and again on June 25, 1954, when he took her written statement. The first interview took "in excess of one hour" and the second "probably 45 minutes". (P. 86 Transcript of Record.) He observed no "evidence of mental confusion" on the claimant's part.

Brobyn admitted that he did not interrogate any of the three doctors whose names were supplied to him as having treated the claimant. While he did interview her employer's son, he did not check employees as to whether claimant had actually been employed.

In behalf of the claimant, Dr. Elkin testified on direct examination that she had been his patient intermittently for about 12 years; "in 1951 she was all right except that she had minor attacks of hypertension, nervousness" and "other than that she was all right"; that she was employed at his suggestion because he thought it might alleviate her nervous condition; that he knew she had worked for Charles Murray, Inc. and Regency Clothes; that about a year and a half later, which would be about March, 1953, he advised her to stop work because she was "beginning to have lapses of memory; beginning to get fidgety, nervous, stubborn."

Herbert L. Goldman, the claimant's son, president of the three corporations which employed her, testified that in 1950 and 1951 there was "a lot of shrinkage in inventory, and merchandise was being stolen out of the store"; that while the fellow who stole the goods was arrested and convicted, there was only partial reimbursement for the loss by the bonding company; that on the advice of Dr. Elkin that his mother would be better off if she were occupied, he employed her at a salary of $75.00 a week "to watch pilferage"; she would also occasionally answer the phone, sort sales slips, watch the cash register and make herself generally helpful; in March 1953, she ceased employment on the advice of Dr. Elkin; subsequently her condition worsened and in the summer of 1954 she became "abnormal"; "she was physically sick and mentally sick"; that at the time of the hearings she was in a convalescent home because she was unable to take care of herself.

Ianni, claimant's long-time friend, testified that he saw her frequently at work between October, 1951 and March, 1953; that in 1954 she stopped work because "she was confused—she was beginning personally to slip."

Ronald Berman testified that while attending college he was a part-time employee of Charles Murray, Inc. and Regency Clothes, in 1951 and 1952 (the clothing stores operated by the two concerns were situated about a half block from one another); that claimant was a fellow employee—"she was watching the store; watching the help; when people came in sometimes she waited on trade, answered the telephone, etc.; that when he stopped work around Christmas 1952, she was still employed.

Affidavits to similar effect were adduced in testimony of the following fellow employees of claimant: James H. Smith, Helene Schuman, James Rochester and Hyman Snyder. David R. Gettlin, a certified public accountant who audited the accounts of the Goldman corporation submitted an affidavit that he saw the claimant at work from time to time and that she was on the payroll.

The referee while noting the testimony and affidavits of the claimant's five fellow-employees as to her employment chose to ignore them as part of the evidential scene despite their disinterested character.

He ignored too, the testimony of the claimant's physician that she was mentally incompetent at the time she gave Brobyn the June 25, 1954 statement and chose instead to accept the "opinion" of mental competency of a layman, Brobyn, who had spent only 45 minutes with the claimant on that date and who had only observed her for an hour or so four months earlier.

The referee also chose to accept the hearsay testimony of Brobyn that Florence Polk who had witnessed the June 25th statement had stated at the time that she "knew" the contents of the statement to be true despite the fact that Mrs. Polk testified that she was not present at the time the statement was given, that she was not aware of its contents and most significantly that she had not been employed by the claimant and did not know her during the 1951–53 claimant-employment period. Moreover, the referee on the score of mental incompetency, failed to note Mrs. Polk's testimony that the claimant didn't seem to know what she was doing at times in June, 1954 and "she didn't know too much about her affairs"; "her memory was very well" and her "condition gradually got worse."

In view of the foregoing we are of the opinion that the fact-finding of the referee was without substantial basis and that the District Court erred in finding to the contrary.

For the reasons stated the Order of the District Court will be reversed and the cause remanded to proceed in accordance with this opinion.

HASTIE, Circuit Judge (dissenting).

I dissent because I think there was substantial and adequate evidentiary basis for the administrative finding that the social security claimant, Mrs. Goldman, was not employed at the times relevant to this controversy. It was, therefore, the duty of the district court to find, as it did, for the defendant below, and it is our duty to affirm the judgment of the district court.

The majority opinion seems to recognize that the oral statement and subsequent formal and witnessed certification by Mrs. Goldman, that she had been physically incapacitated in 1951, 1952 and 1953 and had never worked for the employers named in her social security claim, are explicit admissions against interest on the critical issue of the case and, therefore, a very substantial kind of evidence.

To escape from the necessity of recognizing these admissions as an adequate basis for the administrative finding, the court reasons that it was arbitrary for the referee who conducted the administrative hearing to reject "the testimony of the claimant's physician that she was mentally incompetent at the time she gave Brobyn the June 25, 1954 statement [the above mentioned admission] and * * * instead to accept the 'opinion' of mental competency of a layman, Brobyn who had spent only 45 minutes with the claimant on that date and who had only observed her for an hour or so four months earlier."

But there was more to the administrator's position than this conflict between the opinion of a doctor and the opinion of a layman. The referee points out that Mrs. Goldman herself was the moving party in the proceeding before him less than a year after the admission in question. She had signed an affidavit dated December 27, 1954, stating that she had been employed during periods in question. She took the same position in the formal request for a hearing before a referee which she executed March 29, 1955. In substance, she was asking the referee to believe that in February and June of 1954 senility resulting from cerebral arteriosclerosis had already made her so incompetent that no credence could be given to her oral and written statements, yet, a few months later, in December of 1954 and thereafter, she was competent to make an affidavit of evidentiary value, and to assert her administrative claim as a mentally competent person. In these circumstances, the referee quite reasonably

had this to say: "If Mrs. Goldman is not now mentally competent to press her claim herein, it ought to be pressed by a person on behalf of an incompetent. But if she is now mentally competent, the burden is certainly on her to explain these statements. As the matter stands, Mrs. Goldman pursues an equivocal course; her statements are not denied or explained by her, but her own attorney seeks to impeach them, by attacking her competency, motive, truthfulness, and by the presentation of contradicting witnesses."

This inconsistent position continued after the referee's decision. Mrs. Goldman herself signed a petition for administrative review of the referee's decision on October 21, 1955. She supported that by a signed statement, asserting in so many words "that she worked for the period aforementioned and the statement in 1954 obtained by Brobyn was obtained at a time, as the evidence so indicated, she was senile and unable to comprehend any conversation." The administrative officers who decided this case were not willing to accept the picture Mrs. Goldman thus gave of herself as competent for gainful employment in 1953, too senile to know what she said and signed in 1954, and again competent to execute credible affidavits and operative legal papers in 1955. I think this court is mistaken in now requiring them to accomplish this feat of reconciling the apparently unreconcilable.

Of course, Mrs. Goldman may have been incompetent in 1954. If so, it is hardly less likely that she was too senile to work in 1953, and that a pro forma employment status was maintained in an effort to give her eligibility for social security benefits. These uncertainties merely serve to emphasize that the referee and the Secretary on administrative appeal had ample basis for deciding this case either way. Therefore, a court shoud not interfere.

I am not concerned that the estate of Mrs. Goldman will get a modest sum in a doubtful case. I am concerned, however, that with so many controversies like this continually requiring administrative decision, this court embarks upon a course of substituting judicial for administrative judgment in doubtful situations.