Langford D. WILSON, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 60-528.

United States District Court
W. D. Pennsylvania.

Aug. 4, 1961.

George B. Stegenga, Washington, Pa., for plaintiff.

Byron Kopp, Asst. U. S. Atty., Pittsburgh, Pa., for Secretary of Health, Education and Welfare, defendant.

MARSH, District Judge.

On July 30, 1957, plaintiff filed with the Social Security Administration, Bureau of Old-Age and Survivors Insurance, an application to establish a period of disability under § 216(i) of the Social Security Act, as amended, 42 U.S.C.A. § 416(i), and an application for disability insurance benefits under § 223 of the Act, 42 U.S.C.A. § 423, alleging that he first became unable to engage in any substantial gainful activity on November 12, 1955. Plaintiff's claims were denied by the aforesaid Bureau, and at plaintiff's request a hearing was had before a hearing examiner of the Social Security Administration who also denied plaintiff's claims. On June 14, 1960, the Appeals Council of the Social Security Administration advised plaintiff that his request for review by it of the hearing examiner's decision was denied; whereupon, pursuant to § 205(g) of the Act, 42 U.S. C.A. § 405(g), plaintiff commenced this action to obtain a judicial review of the decision of the Secretary of Health, Education and Welfare [1] denying plaintiff's claims. The defendant filed a certified copy of the transcript of the record of the proceedings before the Social Secu-

1. Since the Appeals Council of the Social Security Administration denied review of the decision of the hearing examiner, his findings of fact became the findings of fact of the Secretary under § 205(g) of the Act. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776.

rity authorities in compliance with § 205(g) of the Act, supra, and subsequently moved for summary judgment.

Section 205(g), supra, provides in its pertinent part as follows:

"As part of its answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

■ Our jurisdiction and the scope of our review of administrative findings such as were made in this case are clear. Under § 205(g) of the Social Security Act, supra, and under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776, 778; Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46. And while "in discharging that duty we must keep in mind * * * that 'courts must now assume more responsibility for the reasonableness and fairness' of decisions of federal agencies * * *", Goldman v. Folsom, supra, 246 F.2d at page 778, citing Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we "may not substitute [our] inferences for those of the referee which are supported by substantial evidence." Ferenz v. Folsom, supra, 237 F.2d at page 49, citing, inter alia, Livingstone v. Folsom, 3 Cir., 1956, 234 F.2d 75.

■ After reviewing the evidence, the hearing examiner found "that the claimant has not established by the evidence that his impairments have been of sufficient severity as to have precluded him from engaging in any substantial gainful activity at any time from the date of the alleged onset * * * to the date on which he filed disability application."

Section 216 of the Act, 42 U.S.C.A. § 416(i) (1), provides that the term "disability" means:

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

The definition of "disability" under § 223 of the Act, 42 U.S.C.A. § 423(c) (2) is the same.

The Supreme Court of the United States in the case of National Labor Relations Board v. Columbian etc. Co., 306 U.S. 292, at page 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 stated:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' * * * and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

We have reviewed the record upon which the hearing examiner based his decision, and we must conclude that on the record as a whole there is not substantial evidence, as that term is defined in National Labor Relations Board v. Columbian etc. Co., supra, to support the Secretary's decision that the claimant is not precluded from engaging in any substantial gainful activity.

The hearing examiner found that:

"The claimant was born on June 30, 1897 * * *. He completed eight years of formal elementary education. His entire employment career has been in the food business, starting with the Continental Can Company as a picker and as a meat

cutter in a food store owned by his brother. From 1933 until November, 1955, he was a partner with his brother in the operation of a food store in Canonsburg, Pennsylvania.

"In his application to establish a period of disability, the claimant described his condition as 'Back and head injury from accident', and his daily activities as 'Lie around, watch TV, try to help with dishes, dusting and light household chores.' In his request for hearing, filed August 24, 1959, he stated: 'This condition has a tendency to become progressively worse and many patients are known to succumb after a period of five years during which symptoms have intermittently but progressively grown worse.' "

The hearing examiner takes the position that although the claimant has some medically determinable physical and psychological impairment, it is not of sufficient severity to meet the requirements of the Act. At page 10 of the record filed by the Secretary, the hearing examiner states:

"While the evidence shows that the claimant has a definite physical and psychological disorder, the medical evidence does not show that it is of the degree of severity as required by the Act."

He further states on the same page:

"The medical evidence also indicates the *possibility* of remediability * * *." (Emphasis supplied.)

At page 12, the examiner states:

"Section 216(i) (1) provides that 'an individual is not considered to be under a disability unless he furnishes such proof of the existence thereof as may be required.' Thus, the burden of proving that he was disabled, to the extent contemplated by the Act, at the time alleged, rests fully on the claimant. In the opinion of the Hearing Examiner, the claimant has not sustained that burden of proof."

And he concludes:

"Accordingly, on the entire record, the Hearing Examiner is constrained to find that the claimant has not established by the evidence that his impairments have been of sufficient severity as to have precluded him from engaging in any substantial gainful activity at any time from the date of the alleged onset and continuing to the date on which he filed disability application."

We do not believe that this conclusion is supported by substantial evidence.

One of the exhibits before the hearing examiner (Ex. 11) was a copy of a medical report of David N. Ingram, M.D., dated October 16, 1958. In this report Dr. Ingram, the claimant's treating physician, states in part:

"In April of this year after two and one half years of more or less constant observation and study I submitted a report to the Prudential Insurance Company in which my diagnosis, not previously arrived at, was 'Arachnoiditis of the Cervical Spinal Cord' (the lower portion of the cervical cord and the upper 5th or 6th segments of the thoracic cord) 'plus a post concussional syndrome' this condition has a tendency to become progressively worse and many patients are known to succumb after a period of five years during which symptoms have intermittently but progressively grown worse. The dominant symptom in this case is pain and a definite attitude of the patient to avoid as much physical exertion as possible.

"Some three or four months after the original injury the pain in the back of the head, the lower neck and the upper thoracic region became so bad that on several occasions we have had to resort to hypodermics. Over the last 32 months the patient has averaged 25 doses of ½ grain codeine with 10 grains of aspirin a month.

" *    *    *    *    *    *

"Mr. Wilson is a close neighbor of mine as well as a long time patient and I have had occasion to observe him closely and although he gives a pretty fair impression of being in good health on casual observance, actually he *is incapable of any consistent effort and avoids all physical exertion as he would the plague* knowing that it will bring about a series of painful experiences with which he has no desire to cope. To confirm my diagnosis of arachnoiditis an operation on the spine to expose the cord structures would be necessary but I have advised against [this] in that such an operation would serve no good purpose nor would it give him any relief but in all probability would aggravate the symptoms already present.

"Summarizing: *It is my sincere professional opinion that Mr. Langford Wilson has been totally and permanently disabled since January 1, 1956.*" (Emphasis supplied.)

Surely this statement by the claimant's treating physician—an expert whose qualifications and credibility the hearing examiner made no attempt to impugn—constituted substantial evidence that the claimant, from a medical standpoint, was totally and permanently disabled since January 1, 1956. Why is he disabled? The doctor states:

"The dominant symptom in this case is *pain and a definite attitude of the patient to avoid as much physical exertion as possible.*" (Emphasis supplied.)

It is *pain*, not an actual physical inability to manipulate a particular member of the body, that prevents this man from engaging in physical activity and renders him, in the doctor's professional opinion, totally and permanently disabled.

Again the doctor states:

"[A]lthough he [claimant] gives a pretty fair impression of being in good health on casual observation, actually he is *incapable of any consistent effort* and avoids all physical exertion as he would the plague knowing that it will bring about a series of *painful experiences* with which he has no desire to cope." (Emphasis supplied.)

The claimant, then, has met his initial burden and has produced substantial evidence that he is unable "to engage in any substantial gainful activity by reason of [a] medically determinable physical * * * impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The question remaining is whether there was *substantial evidence* to the contrary.

The hearing examiner in his opinion (page 8 of the record) states:

"The medical evidence in this case consists of reports from the Canonsburg Hospital and the Cleveland Clinic, (Exhibits 6 and 7); a medical report by Dr. A. Carlton Ernstene, (Exhibit 9); a statement of Dr. Lowell G. Lubic, (Exhibit 10); and reports of physical examinations by the Prudential Insurance Company of America and Drs. David N. Ingram and Samuel C. Gomory, (Exhibits 8, 11 and 13)."

We have already cited Dr. Ingram's report (Ex. 11) as being in support of claimant's position and unless one or more of the remaining items of "medical evidence" listed by the hearing examiner supports his position, we must reverse the decision of the Secretary.

Exhibit 6 is a copy of an X-ray report relative to· the claimant from Canonsburg General Hospital dated March 15, 1956. While this report of X-rays of claimant's skull and cervical and dorsal spine is essentially negative—except for "[d]egenerative disc changes"—it certainly does not constitute substantial evidence contra the report of Dr. Ingram.

Exhibit 7 is a copy of a report from the Cleveland Clinic, dated April 12, 1956, and signed by a Dr. A. Carlton Ernstene. This report indicates that studies of claimant at the Cleveland Clinic "revealed no evidence of serious organic disease

\* \* \* and \* \* \* *the pain he has been experiencing* has been the result of posttraumatic muscle strain \* \* \*. A considerable element of anxiety and nervous tension have apparently been present and along with this a mild depressive reaction." (Emphasis supplied.)

The report indicated that treatments of claimant "seemed to give him definite relief" of his pain and concluded that "he is definitely improving at *present* and *I hope* his progress will continue." (Emphasis supplied.)

We fail to see how this report furnishes *any* evidence of claimant's ability or inability to engage in any substantial gainful activity or any activity for that matter. The report is not addressed to this question and contains nothing from which such an inference one way or the other reasonably could be drawn.

The same is true for Exhibit 9 which is another medical report signed by A. Carlton Ernstene, M.D., and dated August 21, 1957. This report by Dr. Ernstene, rendered on a form furnished by the Department of Health, Education, and Welfare, adds little to his previous report (Ex. 7). While it is true that in answer to the question: "Have you advised applicant not to work?", the doctor replied "No", we do not think that this is any evidence from which it reasonably could be inferred that in the doctor's opinion claimant was *able* to work. Rather, it is at most a statement that in the doctor's opinion it was not *medically inadvisable* for claimant to work, and, in fact, is really no more than the simple statement that the doctor did not advise claimant in this regard.

Exhibit 10 is a report by Dr. Lowell G. Lubic, dated July 3, 1958. This report is more favorable to claimant's contentions than it is to the hearing examiner's conclusions. The doctor states:

"Since that time [the date of claimant's accident in 1955] he has been bothered by recurrent pain in the back of the neck and over the back of the head. This pain has been essentially continuous but sometimes it is more severe than other times.

"Detailed neurological examination on this patient was completely within normal limits. There was no evidence of focal cerebral disease. X-ray of the skull was essentially within normal limits.

"History and neurological examination suggested that the patient's pain problem was functional in nature and probably secondary to a post-concussion syndrome with a depressed reaction.

"In view of this the patient was treated symptomatically in the hospital in an attempt to relieve the pain problem. On some days the therapy was successful and on other days it was not as successful."

Once again there is nothing in this report from which it could be inferred that claimant was either able or unable to engage in any substantial gainful activity —the report did not bear on this question directly or by implication. In addition, it purported to be nothing more than a neurological report. And while the report indicates that the "neurological examination *suggested* that the patient's pain problem was functional \* \* \*", it did not negate the "pain problem" and did suggest that it was "*probably* secondary to a post-concussion syndrome with a depressed reaction." (Emphasis supplied.)

Exhibit 8 is identified in the record as a "Medical Examination by the Prudential Insurance Company of America".[2] This report submitted by Dr. Ingram to the Prudential Insurance Company of America on April 28, 1958, lists claimant's subjective symptoms as "*constant* aching pains in cervical and upper thoracic region plus intermittent sharp pain". Objective findings are described as:

2. The photostatic copy made part of the record submitted by the Secretary is for the most part illegible and at the court's request, counsel for claimant furnished a typed reproduction thereof for the court's use.

"Prostration—inability to proceed with any task to its completion. Constant restlessness and apparent ever-present fear i.e. of an acute attack of pain. Thinking is confused and speech jerky—often trys to say one thing but comes up with something else."

The diagnosis was "Arachnoiditis of cervical Spinal Cord plus a post concussional syndrome." The doctor indicated that claimant was unimproved and commented that "the nature of the patient's trouble tends to be progressive."

No argument is needed to demonstrate that this report does not support the hearing examiner's conclusions, despite the remark at the end of the report by the doctor that "Laboratory and Clinical tests are all negative. X-ray shows only moderate arthritis."

The final item of medical evidence is Exhibit 13, a report by Samuel C. Gomory, M.D. While this report is undated, it was apparently made after July, 1958, since it refers in the past tense to an event which occurred in July, 1958.

We find no basis in this report for the conclusion that the claimant is not permanently or indefinitely disabled from pursuing substantial gainful activity. Dr. Gomory's diagnosis is: "Post concussional syndrome, manifested by mild depression, anxiety, *severe pain*, dependency on narcotic and cancerophobia." (Emphasis supplied.) The doctor concludes:

"Patient is ambitious and he is hopeful and sincere. Compazine and Marsilid medication *might* bring him out of his depressed anxiety state and *might* counteract the desire for narcotics. New x-ray examination of the vertebrae *might* convince him that he has no metastasis of his old cancer." (Emphasis supplied.)

If we accept Dr. Gomory's prognosis, we must conclude that claimant *might* be cured of *some* of his ills—which is not to say that he will.

We see no point to reiterating the testimony given at the hearing by claimant and his wife. We are satisfied that there is nothing therein which alone, or in combination with one or more of the items of medical evidence, constitutes substantial evidence of claimant's ability to engage in any substantial gainful activity.

In summary, we believe that since the expert opinion of Dr. Ingram as to claimant's disability was not controverted by substantial evidence to the contrary, the hearing examiner's adverse decision on the ultimate fact should be set aside.

As was said by the Court in Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, 874:

"The expert opinion of Dr. Morris as to disability and inability to engage in any substantial, gainful employment, was admissible evidence for consideration by the referee and not, in itself, binding on him. But as it was not controverted by substantial evidence to the contrary, the referee's adverse decision on the ultimate fact was properly set aside. Hill v. Fleming, D.C.Pa.1958, 169 F. Supp. 240, 245."

In Braun v. Ribicoff, 3 Cir., 1961, 292 F.2d 354, 357, the Court stated:

"In Boyd v. Folsom, 3 Cir., 1958, 257 F.2d 778, we defined the scope of the review to be applied to the Secretary's decisions by United States district courts. We said, id., at page 781, that ultimate facts must be reached by a process of legal reasoning based on the legal significance to be afforded primary evidentiary facts and that therefore ultimate findings of fact by the Secretary were reviewable, citing Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776, 779. We also stated that, 'Our judicial duty * * * is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.' "

We find in the case at bar, as the Court did in the Braun case, supra, that "* * * the primary evidentiary facts do not support the ultimate finding of fact that [Wilson] can engage in substantial gainful employment."

An appropriate order will be entered denying defendant's motion for summary judgment, reversing the decision of the Secretary, and remanding the case with directions to grant the claimant a period of disability and disability benefits as of January 1, 1956, the date established by the previously-cited report of Dr. Ingram as marking the onset of claimant's total and permanent disability.