Annie TALLEY, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare of the United States of America, Defendant.

No. C-157-G-60.

United States District Court
M. D. North Carolina,
Greensboro Division.

Nov. 1, 1961.

H. Clay Hemric, Burlington, N. C., for plaintiff.

William H. Murdock, U. S. Atty., Greensboro, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks a review of the final decision of the Secretary of Health, Education and Welfare, Social Security Administration, holding that she was not entitled to a period of disability and disability benefits.

Both plaintiff and defendant have moved for summary judgment pursuant to the provisions of Rule 56(a), Federal Rules of Civil Procedure 28 U.S.C.A., and have supported their motions by briefs.

Under the jurisdictional statute, 42 U.S.C.A. § 405(g), the findings of the Secretary, if supported by substantial evidence, are conclusive, and such conclusiveness extends to inferences logically drawn from the evidence. Fuller v. Folsom, D.C.W.D.Ark.1957, 155 F. Supp. 348; Adams v. Flemming, 2 Cir., 1960, 276 F.2d 901. Substantial evidence means "enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Co., 1939, 306 U.S. 292, 59 S.Ct. 501, 505, 83 L.Ed. 660. The burden of proof, both before the hearing examiner and in this court, is upon the plaintiff to establish her claim by the preponderance of the evidence. Roberts .v. Flemming, D.C.N.D.Ala.1960, 186 F. Supp. 426; Adams v. Flemming, 2 Cir., 1960, 276 F.2d 901. We are not authorized, in a proceeding such as this, to substitute our own judgment for that of the hearing examiner, and his determinations may not be set aside if there is any legal basis therefor, "even though upon a consideration of all the evidence this Court might have reached a different conclussion." Thurston v. Hobby, D.C.W.D.Mo. 1955, 133 F.Supp. 205, 209; Julian v. Folsom, D.C.S.D.N.Y.1958, 160 F.Supp. 747; Wilson v. Ribicoff, D.C.W.D.Pa. 1961, 196 F.Supp. 579.

Plaintiff's application to establish a period of disability and for disability insurance benefits was filed on May 18, 1959. The Bureau of Old-Age and Survivors Insurance, Social Security Administration, denied the application, and plaintiff was so notified by letter dated September 24, 1959. Dissatisfied with the disallowance of her application, plaintiff requested a hearing before a hearing examiner, and such hearing was held on June 23, 1960. The plaintiff personally appeared and testified at the hearing and was represented by counsel.

The issue before the hearing examiner was whether the plaintiff was entitled to have established for her a period of disability under Section 216(i) of the Social Security Act, as amended, 42 U.S.C.A. § 416(i), because she was unable to engage in any substantial gainful activity by reason of any medically determinable mental or physical impairment, or to disability insurance benefits under Section 223(a) of the Act, 42 U.S.C.A. § 423.

278

The plaintiff alleges that she became unable to engage in a substantial gainful activity on October 30, 1958, and it is conceded that she met the earning requirements under the 1958 amendments to the Act in the quarter of her alleged disability, and will continue to meet such requirements until December 31, 1963.

Following the adverse decision by the hearing examiner, the plaintiff, on July 29, 1960, requested a review by the Appeals Council. On September 28, 1960, the Appeals Council, being of the opinion that a formal review of the hearing examiner's decision would result in no advantage to the plaintiff, denied the request. Thus, the decision of the hearing examiner became the final decision of the Secretary.

■ In her original application, the plaintiff stated that she first became unable to work on October 30, 1958, due to "loss of use of right arm and hand due to extra rib which grows through a muscle." She described her daily activities as doing some "light cooking" in her son's home. She stated that she could not do any sweeping, could not fasten buttons or hooks on her clothing, and had difficulty in combing her hair. Plaintiff further stated that she had a sixth-grade education, was divorced, and that all of her employment had been in textile mills.

At the hearing held on June 23, 1960, plaintiff testified that she was born on January 8, 1901; that she went to the sixth grade in school; that she was divorced from her husband, and lived in the home of one of her sons; that she started working in a textile mill when she was about fifteen years of age, but stopped working while her children were small; that she returned to the textile mill in 1942 and worked continuously until she was discharged on October 30, 1958, due to her disability; that she was a weaver in the textile mill for about ten years after she returned to work in 1942, but had to discontinue that work due to trouble with her hand; that she then took a job patrolling warps, but had to discontinue this work because she could not tie knots; that she was then assigned to filling shuttles, and had to discontinue this work because she could not hold the shuttles; that her last job was filling batteries for the looms, and when she became unable to do this work she was discharged from the mill; that she has been totally disabled since she was discharged from the mill on October 30, 1958; that she has never done any public work except in textile mills; that she was unable to do much at her son's home because she could hardly walk; that while she did a small amount of cooking, she could not help much with the shopping because she was unable to walk to the store and back; that in addition to being partially paralyzed in her right arm and hand, she had diabetes for which she was required to take twenty units of insulin each day; that she drew unemployment compensation for a short period after she was discharged from the textile mill on October 30, 1958, but was later denied these benefits since she was unable, and thus unavailable, for work.

Mrs. Hilda Kernodle, plaintiff's daughter, testified that her mother could not do any type of public work, and was able to do very little work in the home; that plaintiff's employment with the textile mill was terminated due to the fact that she was unable to use her hand, and that this fact was disclosed in the termination notice; that plaintiff had diabetes and her right arm and hand were paralyzed to the extent that she could not use them; that the paralysis had grown steadily worse over a period of eight or nine years; and that the plaintiff had never engaged in any gainful activities except working in textile mills.

A medical report from Dr. H. H. Simpson, dated May 19, 1959, states that plaintiff was partially paralyzed in her right hand due to an extra rib on her right side, and that this condition was gradually getting worse. Dr. Simpson concluded his report by stating that plaintiff was becoming gradually weaker, that she was unable to work at that time, and that he did not feel she would ever be physically able to work again.

Dr. A. W. Simmons, in a report dated December 8, 1959, described plaintiff's symptoms as weakness of the right arm and hand, swelling of the right hand, weakness of the right leg and foot, poor memory, and depression. He stated there was atrophy of the muscles of the right hand, contracture of all fingers on the right hand, and muscle weakness of the right leg. Dr. Simmons remarked that it was impossible for the plaintiff to do any manual labor with her right hand, and that he did not anticipate any improvement.

Medical reports from Dr. S. Vance Huffman state that plaintiff had a possible brachial plexus injury, old, with atrophy of muscles of hand, and that she had marked weakness of the muscles of the right hand and arm with inability to grasp objects. No treatment for this condition was suggested, and no improvement could be expected. In a later report, Dr. Huffman made a diagnosis of diabetes mellitus, controllable by diabetic pills and diet. The report further indicates that no improvement of this condition could be expected, and that plaintiff should not engage in excessive, strenuous activities.

As a basis for concluding that the evidence failed to establish that the plaintiff had an impairment, or combination of impairments, of sufficient severity as to prevent her from engaging in any substantial gainful activity, the hearing examiner stated:

"The Hearing Examiner takes notice that in our present-day economy, the loss of an arm does not make a person unemployable. In industry the functional processes of numerous occupations can be, and are, broken up to allow for the loss of an arm. There are many occupations which orthopedic disability does not disqualify a person from performing satisfactorily. It is true that the complete loss of an arm is one of the most serious orthopedic disabilities; however, it does not necessarily follow that the partial loss of this extremity establishes disability."

These observations on the part of the hearing examiner, when applied to the facts in this case, are completely unrealistic. The uncontradicted evidence shows that plaintiff, a lady 58 years of age at the time her disability arose, has done nothing but work in textile mills and in her home since she was fifteen years of age; that she only has a sixth-grade education; that due to the partial loss of use of her right arm and hand, she was shifted from job to job in the textile mill, and was finally discharged on October 30, 1958, due to her inability to perform any services in the mill; and that she has since been unable to do anything other than some "light cooking" in her son's home. The uncontradicted medical testimony discloses that the plaintiff is partially paralyzed in her right arm and hand due to an extra rib on her right side; that the condition is becoming gradually worse; that no improvement is anticipated; and that she will probably never be able to work again.

The only conclusion logically to be drawn from these facts is that plaintiff's disability is severe enough to preclude any substantial gainful activity, and that such disability can be expected to be of long continued and indefinite duration.

Disability is not commensurate with "helplessness," Aaron v. Fleming, D.C.M.D.Ala.1958, 168 F.Supp. 291, and it is unnecessary for a claimant to eliminate every possibility of gainful employment. Klimaszewski v. Flemming, D.C. E.D.Pa.1959, 176 F.Supp. 927. There is not the slightest suggestion in any medical report that the plaintiff can engage in any substantial gainful activity, or that she will be able to engage in any such activity within the foreseeable future. While the hearing examiner takes notice of the fact that the loss of an arm does not necessarily make a person unemployable, he fails to suggest in what type of gainful activity this particular plaintiff could engage. Plaintiff's age, training, experience and education disqualify her from engaging in any substantial gainful activity other than in a textile mill, and it is not controverted that she is totally

incapable of performing work of this nature.

A careful examination of the record fails to disclose any basis for the conclusion that the plaintiff is not permanently disabled from pursuing any substantial gainful activity, and the court is satisfied that there is nothing in the record which constitutes substantial evidence to the contrary. Hilber v. Ribicoff, D.C.Mont. 1961, 196 F.Supp. 460; Wilson v. Ribicoff, D.C.W.D.Pa.1961, 196 F.Supp. 579;

Peck v. Ribicoff, D.C.E.D.Va.1961, 193 F.Supp. 450.

It is concluded that the defendant's motion for summary judgment should be denied, and that the case should be remanded to the Secretary with the directions that the plaintiff be granted a period of disability from October 30, 1958.

Counsel for the plaintiff will prepare and present, after inspection by counsel for the defendant, an appropriate order.