Anthony Obert THORN

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

Civ. A. No. 30785.

United States District Court
E. D. Pennsylvania.

Feb. 27, 1963.

William F. Quinlan, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for establishment of a period of disability under section 216(i) of the Act, 42 U.S.C.A. § 416(i), and for monthly disability insurance benefits under section 223 of the Act, 42 U.S.C.A. § 423. Plaintiff's insured status under the Act

expired September 30, 1957. He seeks a so-called "disability freeze" [see Kerner v. Flemming, 283 F.2d 916, 918 (C.A. 2, 1960)]. Hence, the question is whether "disability" within the meaning of the Act existed before September 30, 1957. The Hearing Examiner, whose findings were adopted by the Secretary, found that it did not.

■ The scope of my review is, of course, to determine whether "the findings of the Secretary" are "supported by substantial evidence." 42 U.S.C.A. § 405(g); Goldman v. Folsom, 246 F.2d 776, 778 (C.A.3, 1957). The resolution of this question depends largely upon an analysis of the medical evidence submitted, placed against the plaintiff's own medical and personal background.

■ Plaintiff was born on July 25, 1900, and completed one year of high school. (Tr. 40, 62) [1] His occupation was general carpenter. He was employed by a department store for 25 years in that capacity. (Tr. 40–42) Plaintiff asserts that he sustained permanent injuries as the result of an industrial accident on March 9, 1951, when his shoulder was struck by the door of a freight elevator. (Tr. 42–43, 106) He returned to work after three days and continued to work on the same job for 16 months after the accident, receiving the same rate of pay of $116. a week. (Tr. 120) On July 9, 1952, he obtained a leave of absence from his employer for the purpose of receiving treatment at a hospital. He has not returned to his former job nor has he sought other employment after July 9, 1952.

Plaintiff was awarded compensation by the Pennsylvania Workmen's Compensation Board at the rate of $25 per week retroactive to July 16, 1952. (Tr. 209–212) Compensation payments ceased in 1960 after he had exhausted his rights thereto.

Plaintiff lives with his wife in a six room house. (Tr. 45) His wife is employed full time. (Tr. 45) Plaintiff is ambulatory, takes care of his personal needs, and travels about by using public transportation. (Tr. 45–46) Plaintiff's testimony at the hearing with respect to his symptoms consists essentially of complaints of pain in his knees, shoulders and chest. He also takes nitroglycerine pills for the heart. (Tr. 46) He carries a cane and wears braces on both legs. (Tr. 51–53).

The earliest medical evidence is the record of his hospitalization on July 11, 1952, for ten days. His condition was diagnosed by the hospital as traumatic arthritis and adhesive capsulitis of the right shoulder.[2] (Tr. 69–161) Within a short time thereafter, plaintiff was re-admitted to the hospital and remedial surgery was performed on October 28, 1952, to reduce the shoulder inflammation. He was discharged as recovered, with a finding that "shoulder motion has improved." (Tr. 69) His attending physician, Dr. Seifer, expressed the opinion in April, 1953, that notwithstanding the improvement of motion in the right shoulder, the patient is permanently disabled and the original injury is the direct cause thereof. (Tr. 69).

On October 30, 1956, plaintiff commenced a course of treatment with a general practitioner, Dr. Silk, which continued until February, 1960. Dr. Silk diagnosed the condition as traumatic arthritis of the right shoulder and knees and administered exercise (physiotherapy) and heat (diathermy). (Tr. 67–68; 74; 79–80) On July 11, 1957, Dr. Silk reported that plaintiff was semi-ambulatory, had difficulty in walking secondary to injury of March 9, 1951 [sic], was suffering from traumatic arthritis, that he had advised plaintiff not to work and that his condition was static. (Tr. 67).

---

1. References are to the transcript before the Hearing Examiner.

2. Inflammation of a capsular ligament of a joint, characterized by adherence or sticking together of contiguous parts. Dorland's Illustrated Medical Dictionary, Twenty-third Edition—Edited by W. M. Saunders Company.

There is a further report from Dr. Silk which, although dated September 10, 1958, states:

"Mr. Anthony Obert-Thorn has been under my care since September 1956, suffering from an incapacitating traumatic arthritis, secondary to an injury in 1951.

"At the present time he is totally disabled."

This is all of the medical evidence that relates directly to the period before September 30, 1957, and if this were the only evidence in the case, it would be impossible to conclude that the Secretary's finding adverse to plaintiff was supported by substantial evidence.

However, on December 12, 1957,—less than two and one-half months after the critical date,—plaintiff was examined by Dr. A. M. Rechtman for the Government. Dr. Rechtman concluded (Tr. 72):

"* * * This man undoubtedly has changes in the right shoulder characteristic of an adhesive capsulitis. There is also some restriction noted in the hand and knee. While this undoubtedly is true, there is obviously a tremendous functional element and gross exaggeration on the patient's part. We believe that his work potential as a carpenter is nil and for rehabilitation to be accomplished one would first have to 'reach him', emotionally and functionally, before any further measures were undertaken."

Later, in July, 1960, Dr. Donald Berkowitz, an internist, reported (Tr. 85):

"I [sic] would appear to me, that this patient's potential to work again as a carpenter, is practically zero. He has no desire to be rehabilitated, and will not cooperate. I do not think that the hypertension is disabling him to any significant extent. He appeared to be a markedly immature individual, and might gain some benifit [sic] from psychotherapy."

Certainly, neither of these reports furnishes *any* evidence, much less substantial evidence, that plaintiff did not have an impairment in September, 1957. Indeed, it is impossible to read Dr. Rechtman's opinion without concluding that only two and one-half months after September 30 plaintiff was suffering at least from a disabling *mental* condition, which continued through Dr. Berkowitz's examination of July, 1960. Clearly, neither of these doctors gave the slightest intimation that plaintiff was malingering and yet both concluded that his ability to work as a carpenter was "nil" or "practically zero." If it be said that Dr. Rechtman's report, close as it was in point of time to September 30, does not prove that the impairment he found in December existed in September, it does not even come close to proving that it did not exist at the earlier date.

"* * * The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. * * *" Klimaszewski v. Flemming, 176 F.Supp. 927, 931 (E.D.Pa., 1959). It is impossible to determine how the Hearing Examiner regarded each of these two separate criteria, for his conclusion lumped them together. He said:

"* * * Therefore, after careful consideration of the entire record in this case, the Hearing Examiner finds that the claimant has failed to establish that he was unable to engage in any substantial gainful activity on September 30, 1957, the date he last met the earnings requirement aforesaid, or at any time prior thereto, because of a medically determinable physical or mental impairment within the meaning of the Social Security Act. * * *"

In all fairness to the Hearing Examiner, when his findings were made (July 26, 1961). Hodgson v. Celebrezze, 312 F.2d 260 (C.A.3, 1963), had not been decided. In that case Chief Judge Biggs said, at pages 263, 264:

"* * * We cannot uphold the Examiner in his conclusion that this physical impairment does not result in inability to engage in substantial gainful activity. The only specific job suggested by the record in which Hodgson might obtain substantial gainful employment is that of an elevator operator. We find nothing in the record to indicate that this possibility is a realistic one. Although it is disputed, there is substantial evidence to the effect that Hodgson is physically capable of performing a job which entails sitting and standing but little walking, such as operating an elevator. But assuming that Hodgson has the physical ability, where is he to find such employment? There has been no attempt to show that this occupation is one in which jobs are open to someone like Hodgson, with his physical limitations and his education and vocational history. In the absence of such a showing we cannot sustain the denial of benefits to Hodgson. As was said in Klimaszewski concerning the statutory language of Sections 216(i) (1) and 223(c) (2): 'The word "any" [substantial gainful activity] must be read in the light of what is reasonably possible, not of what is conceivable.' The possibility of this 55-year-old man obtaining employment as an elevator operator is not shown to be a reasonable one.

"* * * when the record is tested by the principles set forth above, there fails to appear substantial evidence to support a finding necessary to the Secretary's determination of no disability, viz., that there existed a reasonable opportunity for Hodgson to engage in substantial gainful employment. Neither the bare suggestion in a medical report that the claimant might be able to operate an elevator nor the less specific allusions in the reports to 'a sedentary job', 'some standing job' and 'one in which walking is at a minimum' constitute such evidence. * * *"

If the Hearing Examiner intended to find that plaintiff was not disabled as a carpenter in 1957, that finding is not supported by substantial evidence and is reversed. If he intended to find that plaintiff, although disabled as a carpenter, could do other work, there is no evidence to support that finding consistently with the court's reasoning in Hodgson, supra. Therefore, the decision will be reversed and the cause remanded for a determination of whether, in light of my conclusion that plaintiff was disabled in 1957, that disability prevented him from engaging in substantial gainful activity.

## ORDER

AND NOW, February 27, 1963, IT IS ORDERED that defendant's motion for summary judgment is denied, and the decision of the Secretary of Health, Education and Welfare is reversed and the case is remanded for further proceedings consistent with this Opinion.