Bertha M. BITTEL, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 69-873.

United States District Court,
W. D. Pennsylvania.

April 10, 1970.

Paul H. Titus, of Kaufman & Kaufman, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., by Douglas D. McBroom, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

On November 7, 1967, plaintiff filed with the Social Security Administration an application to establish a period of disability under § 216(i) of the Social Security Act, as amended, 42 U.S.C. § 416(i), and an application for disability insurance benefits under § 223 of the Act, as amended, 42 U.S.C. § 423, alleging that she became unable to engage in any substantial gainful activity on March 16, 1967, as a result of "heart impairment, high blood pressure, poor circulation & hiatal hernia" (R., p. 87). Plaintiff's claims were denied initially and upon reconsideration by the Bureau of Disability Insurance, and at her request a hearing was held before a hearing examiner of the Bureau of Hearings and Appeals who also denied her claims. On June 4, 1969, the Appeals Council of the Social Security Administration advised plaintiff that her request for review by it of the hearing examiner's decision was denied; whereupon, pursuant to § 205 (g) of the Act, as amended, 42 U.S.C. § 405(g), plaintiff commenced this action to obtain a judicial review of the decision of the Secretary[1] denying her claims. With his answer to plaintiff's

---

1. Since the Appeals Council affirmed the decision of the hearing examiner, his findings of fact became the findings of fact of the Secretary under § 205 of the Act. Hodgson v. Celebrezze, 312 F.2d 260, 261 (3d Cir. 1963).

complaint, defendant filed a certified copy of the record of the proceedings before the Administration in compliance with § 205(g) of the Act, and subsequently cross motions for summary judgment were filed by the parties.

■ Section 205(g), *supra*, provides in its pertinent part as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." 42 U.S.C. § 405(g).

Under § 205(g) and under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957).

"[T]he test for disability consists of two parts: (1) a determination of the extent of the applicant's physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity." Bujnovsky v. Celebrezze, 343 F.2d 868, 870 (3d Cir. 1965).

Section 223(d) of the Act, supra, provides:

"(1) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.

"* * * *

"(2) For purposes of paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"* * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d).

The definition of disability under § 216 (i) (1), *supra*, is the same.

Plaintiff was born on May 26, 1912, and completed a two-year commercial high school program at age 16. Her first major employment was as a stenographer-receptionist-switchboard operator-bookkeeper with a consulting engineering firm. Plaintiff left this job in 1945 when she was hospitalized. She next worked for seven months with a company engaged in the manufacture of store equipment and then took the job of office manager in the public relations department of an advertising agency and continued on this job from 1946 to 1952 when she underwent an emergency appendectomy. Plaintiff was unemployed due to "extensive surgical and medical procedures" (R., p. 68) until December, 1962, when she became senior records clerk in the Alumni Office of Duquesne University. On March 16, 1967, she ceased working at Duquesne

University as a result of the physical complaints which were the basis of her application.

Lyle Nelson, M. D., a specialist in cardiology and internal medicine, and plaintiff's treating physician, testified at the hearing on plaintiff's behalf. He concluded that plaintiff was totally and permanently disabled from employment on a day-to-day basis. The factors contributing to this conclusion were congestive heart failure resulting in extreme fatigability and requiring limitations on exertion; hypertension, which was labile; recurring urinary difficulties, due to a stricture of the urethra and a cystocele, which manifest themselves with respect to both frequency and urgency; hiatal hernia; and mild osteoarthritis in the knees. There was also evidence of chronic anxiety reactions (R., p. 128). Dr. Nelson's testimony indicated that of these difficulties, only congestive heart failure was significant with respect to plaintiff's ability to engage in substantial gainful employment. The facts upon which Dr. Nelson relied in making the diagnosis of congestive heart failure were edema or swelling of both of plaintiff's ankles, a sinus tachycardia (rapid heart beat) shown on an electrocardiagram, her shortness of breath and easy fatigability.

That all of these factors did exist on or before March 16, 1967 is not disputed in the record. It appears that after plaintiff stopped working on that date, and while she restricted her activities, got more rest, and continued to take a variety of medicines prescribed by her doctors, all signs and symptoms of congestive heart failure disappeared. She voluntarily resumed work at the Duquesne University Alumni Office on a part-time basis on August 21, 1967, but, by September, plaintiff's symptoms had returned notwithstanding that she had continued with her medication, and on Dr. Nelson's recommendation she discontinued this limited employment in October, 1967. After plaintiff ceased working, she again began to feel better. The reasons for this, according to Dr. Nelson, were: "Rest, digitalis [ a powerful heart stimulant], diuretics and * * * mild sedation" (R., p. 56). She has not worked since 1967 and, by March 18, 1969, the hearing date, plaintiff had not had a recurrence. William R. Bailey, M. D., examined plaintiff on January 11, 1968, and was "unable to demonstrate evidence of structural heart disease or evidence of hypertension which the patient is supposed to have had in the past" (R., p. 118).

A vocational expert testified, assuming that plaintiff's symptoms had not existed, that various jobs, including her most recent job, were within her capability and that these jobs exist in plaintiff's area in various numbers. He also testified, assuming that plaintiff's symtoms did exist, that she could perform no jobs (R., pp. 71–76).

■■ There was no evidence supporting the first assumption upon which the vocational expert based his opinion. The hearing examiner's finding that there was such evidence was based upon the erroneous notion that the subjective complaints of a claimant are not probative of a disability. *Cf.* Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965); Marshall v. Cohen, 295 F.Supp. 649 (W.D.Pa. 1969); 20 CFR §§ 404.1501(c), 404.-1524(c).

■ Although the only evidence of record concerning congestive heart failure points to a finding of disability, the decision of the Secretary must be affirmed because the undisputed evidence of congestive heart failure is not sufficient to prove a disability for purposes of the Act.

Section 223(d) of the Act, *supra*, provides that "an individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d) (5). The Secretary has pursuant to § 205(a) of the Act, 42 U.S.C. § 405 (a), made regulations which set out the

prerequisites to establishing certain types of impairments. The pertinent regulation provides:

"Congestive heart failure is not considered to be established * * * unless there is evidence at some point in time of signs of vascular congestion such as * * * peripheral or pulmonary edema as well as other appropriate findings." 20 CFR § 404.-1539–4.00–B.

One of three conditions must be shown in order to establish congestive heart failure:

"A. Cardio-thoracic ratio of 55 percent or greater, or equivalent enlargement of the transverse diameter of the heart, as shown on teleroentgenogram (6-foot film) [an x-ray]; or

"B. Extension of the cardiac shadow (left ventricle) to the vertebral column on lateral chest roentgenogram [x-ray] and total of S in $V_1$ or $V_2$ and R in $V_5$ or $V_6$ of 35 mm. or more on ECG; or

"C. ECG showing QRS duration less than 0.12 second and R of 5 mm. or more in $V_1$ and R/S of 1.0 or more in $V_1$ and transition zone (decreasing R/S) left of $V_1$ with one of the following:

"1. Enlargement of the left atrium as evidenced by a double shadow on a PA chest roentgenogram [x-ray]; or

"2. Distortion of the barium-filled esophagus."
20 CFR § 404.1539–4.02.

Although the evidence reveals the existence at some point in time of peripheral edema (in the ankles), none of the other proofs sufficient to establish disability due to latent congestive heart failure was submitted. X-rays showed plaintiff's heart to be normal in size, and neither extension of the cardiac shadow nor a double shadow was noted (R., pp. 115, 119). Therefore the requirements of subsections A, B and C–1 of 20 CFR § 404.1539–4.02 have not been met. Nor have the requirements of subsection C–2 been proved by plaintiff. Although the tracings and an analysis of an electrocardiogram were submitted, only one element of subsection C (QRS duration less than 0.12 second) was proved (R., p. 120). Furthermore, an upper GI series showed the esophagus essentially negative (R., p. 115), and thus distortion of the barium-filled esophagus was not shown.

The hearing examiner found that "the classical clinical findings which would be supportive of significant congestive heart failure or other cardiovascular dysfunction are clearly lacking" (R., p. 17). A reading of the record as a whole supports this conclusion. Although this conclusion is seemingly harsh and unreasonable, it is mandated by the regulations promulgated by the Secretary pursuant to authority granted him by the Social Security Act. Since plaintiff has failed to produce evidence which establishes a disability within the meaning of the Social Security Act and pertinent regulations, the defendant's motion for summary judgment must be granted.

An appropriate order will be entered.