Mrs. Bessie D. SPENCER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare of the United States of America, Defendant.

No. C–64–WS–63.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Dec. 9, 1963.

Eugene H. Phillips, Winston-Salem, N. C., for plaintiff.

William H. Murdock, U. S. Atty., and Roy G. Hall, Jr., Asst. U. S. Atty., Greensboro, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to the provisions of 42 U.S.C.A. § 405(g), of the final decision of the Secretary of Health, Education, and Welfare, denying her the establishment of a period of disability and disability insurance benefits. The final decision of the Secretary consists of the decision rendered by Hearing Examiner Albert C. Osofsky, on September 26, 1962, which became the final decision when the Appeals Council denied plaintiff's request for a review. Plaintiff has moved for summary judgment pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that there are no genuine issues as to any material fact, and that she is entitled to a judgment as a matter of law. Defendant has cross-moved for the same relief.

On January 30, 1961, the plaintiff filed her application with the Bureau of Old-Age and Survivors Insurance, claiming that she became unable to work on March 17, 1959, because of "primarily back trouble—also arthritic neuritis & bursitis—may have had light stroke." The application was denied by letter dated April 12, 1961, on the ground that the plaintiff's condition was not disabling within the meaning of the Act. Being dissatisfied with the Bureau's determination, the plaintiff, on October 19, 1961, filed a timely request for hearing. The hearing was conducted by Hearing Examiner Osofsky on August 15, 1962, at which time the plaintiff was represented by Eugene H. Phillips, Esquire, an attorney of her own choosing. In order to establish her claim, it was necessary for the plaintiff to establish by a preponderance of the evidence that she was under disability, as defined in the Social Security Act, as amended, beginning on or before April 1, 1961, for entitlement to disability insurance benefits, and on or before April 30, 1961, for establishment of a period of disability.

The plaintiff is 57 years of age, and has had two or three years of schooling. Since 1925, except for several intervals, she was employed by the Hanes Hosiery Mill until March 17, 1959, as a looper and a seamer. She gave a history of having low back pain for seven or eight years prior to 1959, which became progressively severe, necessitating only part time and irregular work the last two or three years of her employment. On March 17, 1959, while at work, plaintiff became unable to carry on her duties and went home. She has not worked since that date. Following the termination of her employment, she continued to have back pain, wore a brace, and had heat treatments and rest. Since her condition did not respond to therapy over a period of nine months, and her doctor advised against an operation, she was placed on disability retirement by Hanes Hosiery Mill.

At the hearing, the plaintiff testified that for some seven or eight years before 1959 she suffered with pain in her back; that for two or three years before she discontinued her employment with Hanes Hosiery Mill her back became gradually worse and finally reached the point that she could do very little work; that she continued working as long as she could because she felt like she had to work; that she would sometimes have to stay out of work as much as a month at a time because of severe pain; that she wanted to work so bad that she often tried to

work after taking medicine to relieve the pain; that her pain while working was often so severe that she "just cried," but she still continued to work because she felt that she "had to work"; that during the nine months from the time she discontinued her employment until she was placed on disability retirement, she wore a brace, took medicine prescribed by her physician and tried to rest as much as possible; that during this time she "cried and prayed and cried and prayed" because she needed work so badly, and was afraid that she would be unable to resume her activities at the Hanes Hosiery Mill; that her physician, Dr. Forsyth, told her that an operation would probably result in paralysis of her legs if the disk slipped again after the operation, and that she had the alternative of continuing with conservative treatment or taking a chance of being "in a wheel chair"; that she was able to wash and dress herself most of the time, and frequently did some cooking for herself and husband; that she occasionally swept the house, but her husband did most of the washing; that she went to town occasionally to assist with grocery shopping; that she occasionally gathered some vegetables out of her garden, but could not stoop over to get anything; that she had to take a lot of pain medicine to get relief; that her back hurt all the time, but the pain was less severe when she was lying on a hard surface; that sitting, stepping from a curb, or any jarring, increased her back pain; that she had bursitis in her left arm, which also limited her activities; and that her ankles swelled when she stood for any length of time, and she was unable to do anything that required much standing or walking.

By reports dated January 30, 1961, and April 26, 1961, Dr. W. T. Walker stated that he had treated plaintiff since July 20, 1955, at intervals of about every two months. In his report of January 30, 1961, Dr. Walker diagnosed plaintiff's condition as "back pain due to herniated disk," and advised no heavy work. He considered her condition to be static. In his report of April 26, 1961, Dr. Walker indicated that an x-ray of the back showed arthritis of the spine and left shoulder, and that her condition was still static.

On February 7, 1961, Dr. H. F. Forsyth, Bowman Gray School of Medicine, Winston-Salem, North Carolina, advised that x-rays made at the North Carolina Baptist Hospital in 1955 showed "Spondylolisthesis L4–5 and L5–S1. Arthritic changes scattered thru out lumbar spine." His diagnosis was "Herniated nucleus pulposus, L4–5. L4 on L5 and L5 on S1. Hypertrophic spondylitis." He advised that surgery was impossible due to plaintiff's obesity, and that plaintiff should lose weight and wear a brace. He expressed no opinion as to the advisability of surgery if plaintiff should lose weight.

By report dated March 4, 1961, Dr. Thomas W. Simpson, to whom plaintiff had been referred for a weight reducing regimen, diagnosed plaintiff's condition as spondylolisthesis and obesity; he noted that plaintiff had only reduced from 178 to 176½ pounds. Dr. Simpson expressed the opinion that plaintiff's condition was probably static, but that she might improve with weight reduction.

On June 23, 1961, Dr. Harold C. McDowell, at the request and expense of the Government, examined the plaintiff. His examination revealed the plaintiff to be "a very obese, short, 55 year old female who has no special complaints * * * except for continued localized pain in the lower back aggravated by very slight activity, and occasional pain and stiffness of both shoulders and hands." X-rays made of the lumbosacral spine revealed a first degree spondylolisthesis of L–4 on 5, and also a first degree of L–5 on S–1. He also found there had been marked hypertrophic arthritic reaction about the 4th and 5th lumbar vertebrae, and that there was marked narrowing of the lumbosacral joint and moderate narrowing of the L–4 joint. Dr. McDowell's impression was: Spondylolisthesis, first degree, L–4 on 5 and L–5 on S–1; with secondary, severe, hypertrophic arthritic changes in this region.

On November 23, 1961, Dr. Jack Lewis performed an operation upon the plaintiff for carcinoma of the uterus. There is every indication that the operation was successful and that the plaintiff is no longer suffering from this condition.

On November 27, 1961, Dr. H. F. Forsyth reported that he had again examined the plaintiff on November 8, 1961, at which time she still had pain in the low back and down the back of both thighs. He observed that the plaintiff was still markedly obese, and still moved about with some difficulty, partly because of pain in her back and legs, and partly because of a recent abdominal surgical incision. His impressions were spondylolisthesis L4–5 and L5–S1; hypertrophic and degenerative spondylitis of lumbar spine, probably also in cervical and dorsal spine, and marked exogenous obesity. It was considered that plaintiff was even more unsuitable for employment than when previously examined.

 Under the jurisdictional statute, 42 U.S.C.A. § 405(g), the findings of the Secretary, if supported by substantial evidence, are conclusive, and such conclusiveness extends to inference drawn from the evidence. Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962); Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962); Allison v. Ribicoff, 4 Cir., 307 F.2d 379 (1962), and Adams v. Flemming, 2 Cir., 276 F.2d 901 (1960). Substantial evidence means "enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). The burden of proof, both before the Secretary and in this court, is upon the plaintiff to establish her claim by a preponderance of the evidence. Adams v. Flemming, supra; Roberts v. Flemming, 186 F.Supp. 426 (N.D.Ala., 1960). We are not authorized in a proceeding such as this to substitute our own judgment for that of the Secretary, and his determination may not be set aside if there is any legal basis there-

for, "even though upon a consideration of all the evidence this Court might have reached a different conclusion." Thurston v. Hobby, 133 F.Supp. 205 (W.D.Mo., 1955); Julian v. Folsom, 160 F.Supp. 747 (S.D.N.Y., 1958). Further, the term "disability" means " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C.A. § 416 (i) (1) (A). A disability that is remediable cannot meet the requirement that it "be of long-continued and indefinite duration." Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962).

In denying plaintiff's claim, the Hearing Examiner first found that the record did not satisfactorily establish the existence of a herniated disk. It was observed that although the initial diagnoses of Drs. Walker and Forsyth noted the herniated disk, neither doctor referred to such condition in their later diagnoses, and that Dr. McDowell made no reference to a herniated disk in his report. All subjective evidence certainly indicated a herniated disk or some other serious involvement in the low back area. Two doctors, one of whom had been treating plaintiff since 1955, reported a herniated disk. There was no testimony to the contrary. Further elaboration is unnecessary for the conclusion that the finding that plaintiff was not suffering from a herniated disk was unsupported by substantial evidence.

The Hearing Examiner next found that "the spondylolisthesis and the herniated disk, if such existed, are remediable, and, hence, not disabling under the Act." This conclusion was not based upon any evidence in the record, but rather from quotations taken from medical textbooks.

All medical authorities are certainly not in accord with the conclusion reached by the Hearing Examiner. An operation for a herniated disk is not generally recommended except in cases of long standing with major symptoms, and only as a last resort. This view is stated in Gray,

Attorneys' Textbook of Medicine, Third Edition, Volume 1, § 11.60, as follows:

"The review of the literature discloses an exceedingly cautious viewpoint on the part of the majority of experts. They recognize the likelihood of irritation following injection of substances opaque to the x-ray, and the fact that laminectomy with exposure of the spinal cord is a major operation indeed. Although results reported on the whole have been good, such procedures except in the hands of exceedingly experienced operators must be considered as very hazardous. Our experience. under compensation coverage has been extremely poor. The majority of those operated never return to work."

■■ There can be no question but that all the testimony, both objective and subjective, clearly indicated that the plaintiff was totally unable to engage in any substantial gainful activity at the time of the hearing. It must be borne in mind that disability is not commensurate with "helplessness," Aaron v. Fleming, 168 F.Supp. 291 (M.D.Ala., 1958), and that it is unnecessary for a claimant to eliminate every possibility of gainful employment. Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa., 1959). There is not the slightest suggestion in any medical report that the plaintiff can engage in substantial gainful activity within the foreseeable future. No remediable operation was recommended by any doctor. Plaintiff's age, training, education and work experience disqualify her from engaging in any substantial gainful activity other than in a textile mill, and the evidence is uncontradicted that she is incapable of performing work of this nature. Actually, the Hearing Examiner made no findings on the issues as to what plaintiff could do and the employment opportunites available to a person afflicted as she is. The decision cannot be supported without a resolution of these vital issues. See Long v. Celebrezze, 222 F.Supp. 471 (E.D. Kentucky, 1963), and the cases therein cited, and Cochran v. Celebrezze, 4 Cir., 325 F.2d 137.

The only substantial question presented by the record is whether plaintiff's conditions are remediable. As earlier noted, there is no medical evidence in the record to indicate that they are. Dr. Forsyth advised against surgery due to plaintiff's obesity. He did not say that he would advise surgery if she lost weight. The plaintiff testified that Dr. Forsyth told her that there was a good chance of paralysis in her legs if an operation was performed. All the doctors who expressed an opinion stated that the plaintiff's condition was static. If plaintiff's conditions are remediable, it seems inconceivable that this fact was not established by Dr. McDowell, a specialist employed by the Government to examine the plaintiff.

■ Bearing in mind our admonition to avoid an overstrict interpretation of the standards of disability, Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962) and Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962), the court is of the opinion that the record fails to disclose any basis for the conclusion that the plaintiff is not permanently disabled from pursuing any substantial gainful activity, and that there is nothing in the record that constitutes substantial evidence to the contrary. Hilber v. Ribicoff, 196 F.Supp. 460 (D.C.Mont., 1961); Wilson v. Ribicoff, 196 F.Supp. 579 (W.D.Pa., 1961), and Peck v. Ribicoff, 193 F.Supp. 450 (E.D.Va., 1961). Also see Kelly v. Celebrezze, 221 F.Supp. 708 (N.D., Miss., 1963), and the cases therein cited.

It is concluded that defendant's motion for summary judgment should be denied, and that the case should be remanded to the Secretary with the direction that the plaintiff be granted the period of disability and disability insurance benefits to which she is entitled.