**Grace C. ARRINGTON, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. C-89-WS-65.**

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Oct. 18, 1965.

H. Glenn Pettyjohn, Winston-Salem, N. C., for plaintiff.

W. H. Murdock, U. S. Dist. Atty., and H. Marshall Simpson, Asst. U. S. Atty., Greensboro, N. C., for defendant.

EUGENE A. GORDON, District Judge.

This action was brought by the plaintiff, Grace C. Arrington, against the Secretary of Health, Education and Welfare, pursuant to § 205(g) of the Social Security Act, as amended (hereinafter referred to as the Act), 42 U.S.C.A. § 405(g) to review a final decision of the Secretary denying the plaintiff the establishment of a period of disability and disability insurance benefits under § 216(i) and § 223, 42 U.S.C.A. § 416(i) and § 423, for the reason that the plaintiff was not disabled within the meaning of the Act.

The plaintiff filed an application for disability benefits with the Social Security Administration on January 7, 1964, alleging a disability since June 5, 1963, due to a neck injury. The application was disallowed on February 20, 1964. On July 2, 1964, the plaintiff requested a reconsideration of her application, but the initial disallowance was affirmed on October 2, 1964. Thereafter, on November 12, 1964, the plaintiff requested a hearing, which hearing was held on January 19, 1965, before Hearing Examiner John B. Drury. On February 23, 1965, Hearing Examiner Drury rendered his decision, holding that the plaintiff had not established that she had impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity, and denied her a period of disability and disability insurance. Thereafter, the Appeals Council on March 31, 1965, held that the decision of Hearing Examiner Drury was correct; thereby making the decision of the Hearing Examiner the final decision of the Secretary.

This action, seeking judicial review of the final decision of the Secretary, was commenced on May 24, 1965, following which the parties cross-moved for summary judgment.

As stated by the Hearing Examiner, the issues for decision "are dependent upon specific findings as to whether during the effective period of the application filed January 7, 1964, and while the special earnings requirements were met, the claimant was under a disability (as defined by the Act) in that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration and, if so, the beginning date of such disability." It was determined by the Hearing Examiner that the plaintiff met the special earnings requirements and would continue to meet such requirements until June 30, 1968. The Hearing Examiner further stated that "the evidence must establish that the claimant was under a disability * * * beginning on or before April 1, 1964, for entitlement to disability insurance benefits, and on or before April 7, 1964, for establishment of a period of disability."

The sole issue before the Court is whether the decision of the Hearing Examiner denying the plaintiff a period of disability and disability insurance benefits is supported by substantial evidence introduced before him. In Thomas v. Celebrezze, 4 Cir., 331 F.2d 541, 543 (1964), the prescribed standard for ju-

dicial review is clearly set out by Judge Sobeloff as follows:

"The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: ' * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4 Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958); 4 Davis, Administrative Law (1958) § 29.02, pp. 118–126. If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. Park v. Celebrezze, 214 F.Supp. 153 (W.D.Ark. 1963); Corn v. Flemming, 184 F.Supp. 490 (S.D.Fla.1960). In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

The plaintiff is 58 years of age with a sixth grade education. She was involved in an automobile collision on June 5, 1963, although medical records of City Memorial Hospital in Winston-Salem, North Carolina, where the plaintiff was admitted immediately after the collision indicate that the collision occurred on June 6, 1963. As a result of the collision, the plaintiff sustained a neck injury which necessitated hospitalization for one week and confinement to bed for four weeks. The plaintiff contends that due to the neck injury she is now disabled and cannot engage in gainful employment.

In the determination of whether there is substantial evidence to support the decision of the Hearing Examiner, four interrelated types of proof are to be considered: (1) objective medical facts, (2) expert medical opinion, (3) subjective evidence of pain and disability, and (4) claimant's present age, educational background and work history. Underwood v. Ribicoff, 4 Cir., 298 F.2d 850, 851 (1962).

As to objective medical facts, the plaintiff was examined by four physicians. The clinical notes of Dr. De La Torre which were made during the time the plaintiff was hospitalized in City Memorial Hospital indicate that the plaintiff had a past history of cervical arthritis and that as a result of the collision, the plaintiff sustained an occipital impression with fusion of the first cervical vertebra to the occipital bone and a cervical and ligamentous sprain of the neck with pain. A report dated April 21, 1964, of the results of an examination of the plaintiff made by Dr. Tom P. Coker indicated the percentages of normal motion were: Flexion, 75% extension, 25%; right lateral bending, 50%; left lateral bending, 25%; right rotation, 50%; and left rotation, 25%. Further examination revealed that there was posterior settling of vertebra C–3 on vertebra C–4, and C–6 showed marked narrowing and degenerative disc changes with anterior and posterior spurring. X-rays taken on April 21, 1964, showed that the upper four cervical veretebrae moved as a unit, with little motion between flexion and extension. Dr. Coker concluded that

the plaintiff suffered an acute injury superimposed on a pre-existing abnormality. Dr. James E. Robinson, after examining the plaintiff, stated in a report dated September 22, 1964, that the plaintiff was "suffering from a strain of the muscular and ligamentous structures surrounding the cervical spine." He concluded that the injury appeared "to have been superimposed upon an early osteoarthritis of the lower cervical vertebrae, associated with degeneration of the intervertebral disc between the sixth and seventh cervical vertebrae." Dr. B. E. Pulliam in an examination of the plaintiff on July 28, 1964, found that the plaintiff had sustained a "whiplash injury to neck," and in another examination on November 12, 1964, Dr. Pulliam found that the plaintiff had high blood pressure. Hence, in summary, the objective medical facts reflect that the plaintiff sustained a severe neck sprain which aggravated a pre-existing arthritic condition of the spine.

In regard to expert medical opinions, Dr. Coker in his report of April 21, 1964, stated that he expected the plaintiff to make improvement, but that it would be several months before a final evaluation could be made. Dr. Pulliam in his initial examination of the plaintiff on July 28, 1964, stated that the plaintiff was gradually improving and should continue to improve despite the defeatist attitude of the plaintiff. However, after an examination on November 12, 1964, Dr. Pulliam stated that the plaintiff showed little, if any, improvement in her condition. Subsequently, in a note dated January 13, 1965, Dr. Pulliam stated that the plaintiff "has been disabled for work since she allegedly sustained an injury to the neck on June 5, 1963. This injury has resulted in a painful stiffness and soreness in the neck and shoulder muscles, and has resulted in almost complete limitation of motion of the neck and head. This condition has been very refactory to all treatment, and has gradually become worse during the past year." In conclusion, Dr. Pulliam stated that he felt "that her disability will persist for an indefinite period of time, and could likely become permanent." In a report dated December 20, 1963, Dr. De La Torre stated that the plaintiff would be able to go back to work by February 1, 1964. In a letter dated January 15, 1964, Dr. De La Torre indicated that improvement in the plaintiff's condition was expected and it was his hope that the plaintiff would "recuperate and resume her previous occupation and activities in life." In an office note dated January 13, 1965, Dr. De La Torre stated that he believed that the plaintiff had been quite disabled and would remain with some degree of disability. Hence, in summary, the initial expert medical opinions of Dr. Coker, Dr. Pulliam and Dr. De La Torre were to the effect that the plaintiff would improve and would be able to return to work, however, after subsequent examinations, Dr. Pulliam and Dr. De La Torre were of the opinion that the plaintiff was disabled and might be so permanently.

As to subjective evidence of pain and disability, the plaintiff testified at the hearing that since her injury sustained in the collision on June 5, 1963, she has pain in her neck, shoulders, arms, hips and legs; that the pain is constant, but varies in severity; that her neck is stiff and that she cannot turn her neck in either direction without turning her entire body; that lifting and lowering her head is limited and painful; that she has less pain when lying down or walking than when in a sitting position; that with increased physical activity, the pain increases and her blood pressure rises; that when she gets up in the morning that she must lie down several times during the day to rest in order to alleviate pain; that she is able to dress and wash herself, but that she cannot raise her arms to fix her hair; that she must be helped in and out of the bathtub; that she can do some dusting in her home and washes dishes, but there are times when she is unable to finish these tasks due to pain; that she can spread beds and sweep with a broom, but not a sweeper; that she cannot do much ironing, sewing, mending or needle

work due to the fact that she must hold her head down which causes her pain; that she can load and unload an automatic washing machine when the pain is not great; that she can hang out wet clothes if the line is not too high; that she does no yard work; that she attends church regularly so long as the services are not too long as she cannot sit for long periods of time; and that when the weather is warm, she is able to visit sick members of the congregation of the church for short periods of time; and that due to pain, she is unable to go back to work or seek other employment. The husband of the plaintiff also testified at the hearing, and he corroborated the testimony of the plaintiff. Hence, in summary, the plaintiff's testimony corroborated by her husband is that she suffers constant pain, but is able to perform a few tasks in her home as long as there is little physical activity involved.

As to the plaintiff's age, educational background and work history, she is presently 58 years old and attained a sixth grade education. From 1926 until June, 1963, the plaintiff worked as a sewing machine operator with the exception of three years from 1933 to 1936 when the plaintiff was unemployed. Her employment included sewing shoulders on heavy underwear with the use of a sewing machine, tacking heavy shirts, sewing cuffs on underwear, binding legs on briefs, and also included lifting bundles of 48 briefs from a bench on her right about waist high when the plaintiff was in a sitting position, working on them in her lap, and throwing them to another bench of about the same height on her left.

 Viewed in its entirety, the Court is of the opinion and so finds that the conclusion of the Hearing Examiner is not supported by substantial evidence. In fact the evidence refutes the conclusion that the plaintiff's impairments were not of sufficient severity to prevent her from engaging in any substantial gainful activity. The evidence tended to show that the physicians when they first examined the plaintiff were of the opinion that her condition should improve and that she could return to her former occupation. However, subsequent examinations revealed that the plaintiff was disabled, and would be disabled for an indefinite period of time and that there was a strong possibility that the disability would be permanent. In considering the plaintiff's age, education and previous work history, the Court concludes that the plaintiff is disabled within the meaning of the Act. Even though the plaintiff performs some tasks in her home, this does not necessarily indicate absence of disability because one need not be bedridden to come within the provisions of the Act. Thomas v. Celebrezze, supra.

The Court is of the opinion, and finds as a fact, that the record as whole, including the expert medical opinions and the subjective evidence of pain, establishes that the plaintiff has been unable to perform any substantial gainful activity by reason of a medically determinable physical impairment which can be expected to result in death or to be of long-continued and indefinite duration, and that the record is barren of substantial evidence to the contrary. It follows that the motion of the defendant for summary judgment should be overruled, and the motion of the plaintiff for summary judgment should be granted.

An order will be entered remanding the cause to the Secretary of Health, Education and Welfare, with the direction that the plaintiff be granted the period of disability and disability insurance benefits to which she would have been entitled had her application of January 7, 1964, been approved.