Ruth SMITH, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

No. C–139–WS–65.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

March 4, 1966.

J. N. Buck Freeman, Mount Airy, N. C., for plaintiff.

William H. Murdock, U. S. Atty., and H. Marshall Simpson, Asst. U. S. Atty., Greensboro, N. C., for defendant.

EUGENE A. GORDON, District Judge.

On May 5, 1964, the claimant filed an application for disability insurance benefits under the provisions of §§ 216(i) and 223(a) of the Social Security Act as amended, 42 U.S.C.A. §§ 416(i) and 423 (a). She alleged that she became unable to work in September 26, 1963 because of a "heart condition". Her application was disallowed on July 23, 1964, and on July 28, 1964, she requested that her application be reconsidered. On November 27, 1964, the plaintiff's request for reconsideration was denied. Thereafter, on February 5, 1965, the plaintiff requested a hearing, which hearing was held on April 7, 1965, before Hearing Examiner, Charles H. Evans. On April 28, 1965, the Hearing Examiner rendered his decision holding that the plaintiff had not established that she had impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity and denied her a period of disability and disability insurance. Thereafter, the Appeals Council, on June 16, 1965, held that the decision of the Hearing Examiner was correct thereby making such decision the final decision of the Secretary of Health, Education and Welfare.

This action, seeking judicial review of the final decision of the Secretary, was commenced on August 9, 1965, following which the parties cross-moved for summary judgment.

As stated by the Hearing Examiner, the issues for decision are whether the plaintiff is entitled to disability insurance benefits under § 223(a) of the Social

Security Act, 42 U.S.C.A. § 423(a), and whether a period of disability may be established under § 216(i) of that Act, 42 U.S.C.A. § 416(i). The issues are dependent upon specific findings as to whether during the effective period of the application, filed May 5, 1964, and while the special earnings requirements are met, the claimant was under a disability in that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, and, if so, the beginning date of such disability.

The Hearing Examiner further correctly stated that the evidence must establish that the claimant was under a disability as defined by the Act beginning on or before August 1, 1964 for entitlement to disability insurance benefits and on or before August 5, 1964 for establishment of a period of disability.

The Hearing Examiner decided that the plaintiff was not entitled to the aforesaid period of disability and disability insurance benefits finding that:

"1. The claimant has suffered from paroxysmal arrhythia tachycardia since her teens.

2. The aortic insufficiency which has been diagnosed as mild, does not, in itself, result in the inability to engage in a substantial gainful activity.

3. The claimant has met the special earnings requirements during the effective period of the application filed on May 5, 1964 and continues to meet such requirements through September 30, 1968.

4. The claimant is capable of performing the duties of her prior position of looper and seamer in a hosiery mill.

5. The claimant has not established that she has impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity at any time for which her application of May 5, 1964 was effective."

On April 11, 1962, the plaintiff became ill at her place of employment and was examined by J. Dale Simmons, M.D. Over a period of many months, there followed a series of examinations and tests which will be discussed, infra.

The sole issue before this Court is whether the decision of the Hearing Examiner (made the decision of the Secretary of Health, Education and Welfare by the action of the Appeals Council) was supported by substantial evidence. In Thomas v. Celebrezze, 4 Cir., 331 F.2d 541, 543 (1964) the prescribed standard for judicial review is clearly set out by Judge Sobeloff as follows:

"The prescribed standard for review, found in § 205(g) of the Act, 42 U.S.C.A. § 405(g) is as follows: ' * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *.' Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize the 'record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958) * * * if * * * reliance has been placed upon one portion of the record to the disregard of over-

whelming evidence to the contrary, the courts are * * * bound to decide against the Secretary. * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

■ There are four elements of proof to be considered in making a finding of claimant's ability or inability to engage in any substantial gainful activity: (1) objective medical facts which are the clinical findings of examining or treating physicians divorced from their expert judgments or opinion as to the significance of these clinical findings; (2) the diagnoses or expert medical opinions of these physicians; (3) the subjective evidence of pain and disability testified to by claimant, and corroborated by claimant's family and neighbors; (4) the claimant's educational background, work history and present age. Underwood v. Ribicoff, 4 Cir., 298 F.2d 850, 851 (1962).

"For the purpose of making a finding of act on this issue, the fact finder must recognize the obvious interrelation of these elements of proof. The objective medical findings may show more or less clearly the existence of certain clinically determinable physical * * * impairments. However, a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual. This is a matter of medical judgment to be decided with reference to the individual's general physical condition and the state of development of each of the defects." Ibid.

Therefore, considering these first two elements of proof together, the following is the medical evidence.

The first medical record is a report of J. Dale Simmons, M.D., undated and received by the Social Security Administration on August 4, 1964. Dr. Simmons indicates that he examined the plaintiff in April, 1962 for a cardiac complaint and that she had a history of paroxysmal arrhythia tachycardia (the medical abbreviation of "PAT" will hereinafter be used) for several years. Other records indicate that she had, in fact, been so afflicted since her teens.

Next, there is a hospital report covering her stay and examination in Baptist Hospital where she was admitted on August 24, 1962. The report provides few objective facts relating to her heart trouble. It does indicate that Dr. Simmons had diagnosed her condition as PAT and had confirmed this finding by an electrocardiogram. In the part of the hospital report relating to the examination of her heart, it was stated that in beating,

"P2 is slightly louder than A2; there is a bare grade one systolic murmur heard over the pulmonic region only, on expiration. Blood pressure is 130/70 * * *"

Jack Crutchfield, M.D., a cardiologist, submitted a report to Dr. Simmons dated July 28, 1962, wherein, after his own examination and after studying the hospital report, he diagnosed the plaintiff's condition as "functional PAT and premature beats". In that report, he entertained the suspicion that she was suffering from rheumatic heart disease.

In a report made to Dr. Simmons on September 23, 1963, Dr. Crutchfield indicated that after re-examining the plaintiff there were two new findings:

"There was a third sound all over the precordium and on expiration there was a definite grade one, A1 murmur, best heard at the junction of the manubrium and the body of the sternum. The grade one pulmonic systolic murmur remained unchanged."

The premature beat was noted and Dr. Crutchfield continued:

"I now feel, therefore, that we must diagnose rheumatic heart disease with slight A1 and incomplete right BBB and irritability * * *"

He then indicated that he had re-examined the electrocardiogram made at Baptist Hospital on July 28, 1962 and found some change therein, which change suggested that:

"* * * rheumatic myocradtes has affected her right arm BB since she was here on 7/28/62."

In a medical report to the Social Security Administration dated May 8, 1964, Dr. Simmons referred the Administration to the information contained in the report of Dr. Crutchfield last referred to and that he diagnosed her condition as (1) Rheumatic heart disease and (2) aortic insufficiency. In reply to the question on "Progress?", Dr. Simmons replied:

*"Due to frequent episodes of PAT and premature beats * * * I feel that this patient should not do any type of public work for an indefinite period."*

On June 12, 1964, Dr. Crutchfield made a report to the North Carolina State Board of Public Welfare wherein he stated that the plaintiff was afflicted with rheumatic heart disease with aortic insufficiency and an irritable heart, concluding:

*"I would anticipate that she will not be able to be an effective worker again."*

J. T. Marr, M.D., conducted an x-ray examination of the plaintiff's heart and in a report dated June 12, 1964, stated that the plaintiff's heart was 7% above average but within normal limits.

On September 15, 1964, Dr. Simmons submitted a report to the North Carolina State Board of Public Welfare wherein he stated:

"In September, 1963, this patient was having frequent premature ventricular beats, had a QRS complex change in the electrocardiogram and a sed rate which corrected to 28. There was a Grade I systolic murmur at the left sternal border and when seen on October 15th, there were premature beats from 1:3 to 1:12

* * * It was my impression at the time, the patient had active rheumatic myocarditis. Her symptoms improved and the premature heart beats gradually decreased and in January 1964 the patient had a sed rate of 20 and it has remained at that level since that time. On April 1, 1964, the patient had no audible murmur, had improved * * * I advised the patient to return to gradual increase in activity at that time, but on 4/18/64 the patient was examined because of irregular heart beats and was found again to be having frequent premature ventricular beats. Again I felt there was activity present, that the myocardium was quiet [sic] irritable since this patient had continued on quinidine and continued her premature ventricular beats despite salicylates and bed rest. The patient has continued to have episodes of irregular heart beats * * * *I feel that this patient definitely has rheumatic heart disease and there has been recent activity substantiated with elevation of sed rates and electrocardiographic changes * * * I do not feel that the patient could be employed at a gainful employment at this time and have advised her not to do public work at the present time."* (emphasis supplied)

C. Glenn Sawyer, M.D., the Government retained Medical Advisor to the Hearing Examiner, did not examine the plaintiff but did examine her medical and hospital records before testifying at the hearing. He stated that the evidence supported the likelihood of rheumatic fever and that from the evidence, if the plaintiff had an aortic insufficiency, it was not to a severe degree. He described PAT as being characterized by episodes of rapid heart action, with the heart beating very fast and regular with an abrupt onset and an abrupt termination. He further stated that this condition could be found equally among those afflicted with heart disease and those who are not suffering from it.

Continuing to discuss PAT, Dr. Sawyer testified that while it is disabling at the time of the episode, a person is able to perform when it is not present. He pondered the question of whether there was any causative relationship between exertion and the onset of the episodes of PAT but arrived at no conclusion.

Both physicians who examined the plaintiff reported that the plaintiff suffered from recently active rheumatic heart disease, both reported that she suffered from an irritable heart, both reported that she was afflicted by premature heart beats. These medical findings and expert medical opinions are in no manner contradicted. The Hearing Examiner found only that the plaintiff suffered from a mild aortic insufficiency and PAT. On this basis alone, the Findings are not supported by substantial evidence for by finding that the plaintiff suffered only from PAT and aortic insufficiency he was in fact making a finding that the plaintiff did *not* suffer from the afflictions diagnosed in the medical reports. There is ample evidence that she did suffer these ailments and none to the contrary.

■ There is more. Both Dr. Crutchfield and Dr. Simmons stated that the plaintiff was unable to return to work and should not do so. These opinions were contradicted by no other evidence. Although the fact of plaintiff's ability or inability to engage in substantial gainful activity is an ultimate fact and is not one to be resolved on the basis of medical opinion evidence, United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617, 623 (1935), nevertheless, such evidence is of great weight.

Judge Bell, speaking for the Fourth Circuit, in a case in which the evidence closely resembled the present case in the uncontradicted nature of the medical testimony, said:

"This expert judgment is not met or contradicted by any other expert judgment. There is nothing in the record to counter the weight it lends to a finding of disability. This judgment may not be * * * considered as conclusive on the ultimate fact in issue, e. g., Claimant's ability to engage in a substantial gainful activity. It does, however, reflect Dr. Howard's opinion of the severity of Claimant's impairments, the degree of their development, and the Claimant's physical * * * capacity to resist or adapt to them." Underwood v. Ribicoff, supra.

On the question of subjective evidence of pain and disability, the plaintiff testified at the hearing that she, formerly entirely bedridden, could now do some cooking but little beyond that. She still has her "attacks" though with less frequency and severity than formerly. She must have someone in to aid her in her housework and can do no mopping or sweeping. Her husband's testimony at the hearing confirmed that of the plaintiff and he emphasized that she easily became short of wind and "like to give out" on him in ascending the stairs to the hearing chamber. The plaintiff's husband also testified that Dr. Simmons had told him that her illness was serious, that his wife required more rest than she was taking and that she would never be able to return to work.

■ It is true that the plaintiff's health as indicated, supra, has improved to the extent that she can do the family cooking and it is assumed, although not stated in the record, other light household tasks although none equivalent in arduousness to sweeping and mopping, but her ability to so function, absent other evidence, will not be held as a true test of her ability to engage in substantial gainful activity. Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707, 710 (1963); Mims v. Celebrezze, 217 F.Supp. 581 (D.Colo.1963) and the case of Arrington v. Celebrezze, 252 F.Supp. 65 (decided Oct. 15, 1965 M.D.N.C.).

This subjective evidence of pain and disability is likewise uncontradicted. It reflects the plaintiff's unstinting efforts to continue working by accepting a change of duties and by working a day

or two a week when her health would allow her to do no more.

As to her work experience, education and age, the plaintiff is a fifty-two year old woman with a high school education. In the autumn following her graduation from high school in 1932, she was employed by Renfro Hosiery Mills Company of Mt. Airy, North Carolina, where for nearly three decades she was employed as a looper. In the last six months during which she was employed by said firm she was employed as a seamer, being transferred to that job because she could not meet the production required of a looper. She worked in that position sporadically because of her health. She is trained and experienced in no other work.

■ There are two items of evidence which cannot conveniently be compartmentalized in the categories of evidence set forth above. It is noted that the Employment Security Commission of the State of North Carolina has denied the plaintiff unemployment compensation because she is disabled and is therefore unavailable for employment. Although such a determination is not binding on the Hearing Examiner who must make an independent determination on the question of whether the plaintiff is able to engage in any substantial gainful activity, Johnson v. Flemming, 188 F.Supp. 447 (D.Ore.1960); Hayes v. Celebrezze, 5 Cir., 311 F.2d 648 (1963), the employment of the words "not *determinitive*" in the Social Security Regulations, 20 C.F.R. § 404.1525, plainly implies that if such a finding by another agency is not *determinative* of the issue then it is to be given *some* weight, Fowler v. Celebrezze, 222 F.Supp. 609, 611 (W.D.N.C.1963); Mischler v. Celebrezze, 227 F.Supp. 754 (E.D.La.1964) and must be considered along with the other evidence, Stoliaroff v. Ribicoff, 198 F.Supp. 587, 590 (N.D. N.Y.1961). The Hearing Examiner at the least, should have evaluated the standards by which the plaintiff was refused the compensation she claimed before such other agency to determine the significance of those standards. Hayes v. Celebrezze, supra.

■■ The other item is the report submitted by the plaintiff's employer and considered by the Secretary. This report, while containing an opinion that the plaintiff is entitled to "full disability benefits", which opinion is disregarded, United States v. Spaulding, supra, is indicative of the work record of the plaintiff. It specifically indicates that she was unable to perform her duties or meet production because of ill health. Such a statement made by her employer is of great importance when considered with the remainder of the evidence of record.

■ Thus, the medical evidence, the subjective evidence of disability, the corroborating evidence of the plaintiff's spouse, the work history of the plaintiff, and the evidence furnished by her employer all show *nemine contradicente* that the plaintiff is unable to engage in a substantial gainful activity. Considering the evidence whereon it would have been possible for the Hearing Examiner to have based his decision—there is none.

■ Although the courts are not to interpret the Social Security Act so broadly as to equate it with unemployment compensation, Celebrezze v. Sutton, 8 Cir., 338 F.2d 417, 422 (1964); Richard v. Celebrezze, 247 F.Supp. 183, 185 (D. Minn.1965), the Act is nevertheless to be construed liberally, Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962), cert. den. 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962), cert. den. sub nom. Heath et al v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963; Celebrezze v. Bolas, 8 Cir., 316 F.2d 498, 500 (1963); Rodriguez v. Celebrezze, 1 Cir., 349 F.2d 494; DeGracia v. Secretary of Health, Education and Welfare, 248 F.Supp. 522 (D.P.R.1966). In this case, no extraordinary liberality is required.

■■ Although the plaintiff has the burden of establishing her entitlement to the benefits claimed, Spencer v. Celebrezze, 224 F.Supp. 296, 299 (M.D. N.C.1963) the relative burdens of proof

and the shifting thereof concerns us not. The only question is whether the decision of the Secretary is supported by substantial evidence, Williams v. Celebrezze, 4 Cir., 353 F.2d 74 (1965); Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C.1962). The decision is not so supported.

The Court therefore finds as a fact that by the record as a whole the plaintiff has been unable to perform any substantial gainful activity by reason of a medically determinable physical impairment which can be expected to result in death or be of a long-continued or indefinite duration and that the record is barren of substantial evidence to the contrary. It follows that the motion of the defendant for summary judgment should be denied and the motion of the plaintiff for summary judgment should be granted.

An order will be entered remanding the cause to the Secretary of Health, Education and Welfare with the direction that the plaintiff be granted the period of disability and disability insurance benefits to which she would have been entitled had her application of May 5, 1964 been approved.